IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISABELLA LEAVINES, | ) |
|        Plaintiff, | ) |
| vs | ) Civil Action No. 2:24-932 |
| | ) Magistrate Judge Dodge |
| OLLIE'S BARGAIN OUTLET, INC. and LORENZO DUFFEY, | ) |
|        Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Isabella Leavines brings this action against her former employer, Ollie's Bargain Outlet, Inc. ("Ollie's"), and Lorenzo Duffey ("Duffey"), her former manager at Ollie's, under several civil rights statutes, alleging that she was subjected to discrimination on the basis of her gender and disability and to retaliation. She also alleges that she was subjected to quid pro quo sexual harassment, a hostile work environment, sexual battery, sexual assault and the intentional infliction of emotional distress.

Pending before the Court is Defendants' partial motion to dismiss, in which they seek dismissal of five of the ten claims asserted by Plaintiff in her Complaint. For the reasons that follow, the motion will be granted in part and denied in part.[1]

### I. Relevant Procedural History

Plaintiff commenced this action on June 27, 2024 and later filed an Amended Complaint on November 12, 2024 (ECF No. 11). Federal question jurisdiction is based upon the federal civil rights claims asserted in the Complaint, 28 U.S.C. § 1331, and supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367(a).

---

[1] The parties have consented to full jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 18, 19.)

Counts I through IV allege claims against Ollie's under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e 17 (Title VII), for gender discrimination (Count I), quid pro quo sexual harassment (Count II), hostile work environment (Count III) and retaliation (Count IV). Two counts allege claims against Ollie's under the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 ("ADA"), for disability discrimination (Count V) and retaliation (Count VI). Count VII alleges claims of gender and disability discrimination and retaliation against both Defendants under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 ("PHRA"). Additional claims are asserted under Pennsylvania law against Duffey for sexual battery (Count VIII) and sexual harassment and assault (Count IX). Plaintiff also alleges a claim of intentional infliction of emotional distress against both Defendants (Count X).

On December 31, 2024, Defendants filed a partial motion to dismiss (ECF No. 14) which has been fully briefed (ECF Nos. 15, 20.) In their motion, they seek dismissal of Counts II, IV, VI, VII and X.[2]

## II.  Factual Background

Plaintiff began employment with Ollie's on September 22, 2023 at a location in Washington, Pennsylvania. Duffey, who was her manager, immediately began flirting with her. Plaintiff has a neurological condition that affects her ability to assess certain social situations and discern the intent of others. When she told her mother, Brenda Leavines, about Duffey's conduct, Brenda went to Ollie's and informed Duffey of Plaintiff's condition and warned him against taking advantage of her. (Am. Compl. ¶¶ 10-18.)

---

[2] In her response, Plaintiff consents to the dismissal of Count VII insofar as it alleges PHRA claims of disability discrimination, but not with respect to claims of gender discrimination. She also withdraws Count X with respect to Ollie's. (ECF No. 20 at 15.)

In late November 2023, Plaintiff noticed that she was getting fewer work hours and complained to Duffey and another manager, but nothing changed. When Duffey continued to flirt with her, she told her mother who again warned Duffey not to take advantage of her. (*Id.* ¶¶ 19-24.)

Around the same time, Plaintiff was being sexually harassed by Glenn, a male coworker, who told her that he wanted to "give her a good time" and suggested that he had "something" she could use in exchange. Plaintiff wrote a letter documenting Glenn's conduct and gave it to Duffey and a manager from a different Ollie's location, but nothing was done. (*Id.* ¶¶ 25-28.)

On or about December 5, 2023, Duffey called Plaintiff and offered her shifts on December 6 and 8. He also asked her to add him on Snapchat, after which he sent her a message offering her additional work hours if she performed oral sex on him, writing "if you do this sexual favor for me, I will give you more hours." On December 6, Plaintiff worked her shift at Ollie's. At the end of her shift, Duffey took her to a backroom, where there were no cameras, and Plaintiff performed oral sex on him. Plaintiff states she did so because Duffey took advantage of her neurological condition and because of his power over her. (*Id.* ¶¶ 20-34.)

On December 8, Plaintiff worked her shift and a mandatory shift on December 10. When she asked Duffey about being scheduled for more work hours, he said she would "have to open up her availability" to do that, but she did not understand what he meant. The last day she worked at Ollie's was on December 10, 2023. Over the next two weeks, she continued to communicate with Duffey via Snapchat, because she thought she might be scheduled for more hours. During that time, she agreed to Duffey's request that she send him nude photos via Snapchat, but she did not receive more work hours. (*Id.* ¶¶ 35-43.)

On January 13, 2024, Duffey told Plaintiff over the phone that she was being terminated. He informed her that she had not done anything wrong and that, after six months, she could work at another Ollie's location. (*Id.* ¶¶ 44-45.)[3]

Plaintiff filed two separate charges of discrimination with both the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC). On March 5, 2024, she filed a charge alleging sexual discrimination and retaliation, for which she received a Right to Sue Letter on April 3, 2024. Later, on August 30, 2024, she filed a charge alleging disability discrimination and retaliation, for which she received a Right to Sue Letter on September 13, 2024. (*Id.* ¶¶ 46-49 & Exs. A-D.)

## III.   Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] Defendants' version of these facts—that Plaintiff admitted that she was hired only as a temporary employee and was not offered a full-time position (ECF No. 15 at 4)—is not an accurate description of the allegations of the Complaint.

4

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. Ordinarily, if a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). However, Plaintiff has already amended her Complaint once.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Defendants attached to their motion a document they call "Employment Offer and New Store Hiring Notice," to support their contention that Plaintiff was hired only as a temporary employee (ECF No. 15 Ex. A). However, Plaintiff's claims are not "based on" this notice[4] and she does not consent to its authenticity. (ECF No. 20 at 9.) Therefore, it will not be considered in connection with the motion to dismiss.[5]

---

[4] Defendants claim that they are, citing *Reginella Construction Co. v. Travelers Casualty & Surety Co. of America*, 568 F. App'x 174, 178 n.5 (3d Cir. 2014). In that case, the court properly took into consideration a general indemnification agreement when the plaintiff raised claims arising out of the relationship between the parties. Here, however, Plaintiff alleges that she was subjected to various forms of discrimination which could have occurred regardless of the length of her employment.

[5] On a fully-developed record, Defendants may contend, as appropriate, that Plaintiff's employment ended because it was temporary in nature, rather than for a discriminatory reason. Nevertheless, as stated above, even if true, this has little bearing on whether she was subjected to

5

IV.     **Discussion**

    A.  Quid Pro Quo Sexual Harassment Claim (Count II)

In Count II, Plaintiff alleges a claim of quid pro quo sexual harassment based on Duffey's actions. Defendants move to dismiss this claim on the ground that she fails to allege an adverse employment action related to the alleged harassment.

"Title VII forbids actions taken on the basis of sex that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting 42 U.S.C. § 2000e–2(a)(1). Claims for sexual harassment under Title VII may be based on two potential theories: (1) a quid pro quo claim and/or (2) a claim of hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 62 (1986) ("[A] violation of Title VII may be predicated on either of two types of sexual harassment: harassment that involves the conditioning of concrete employment benefits on sexual favors, and harassment that, while not affecting economic benefits, creates a hostile or offensive work environment.")

With respect to a quid pro quo sexual harassment claim, the Third Circuit Court of Appeals has held that:

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute [quid pro quo] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. . . .

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) (citation omitted). A plaintiff must "demonstrate either that she submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual

---

various forms of discrimination in the workplace.

advances." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 133 (3d Cir. 1999).

"To withstand a Rule 12(b)(6) motion, a plaintiff alleging quid pro quo harassment must plead facts to show either (1) he/she submitted to sexual advances based on the quid pro quo offer or threat or (2) a harasser took tangible employment action based on refusal to submit to his/her sexual advances or demands, and (3) the harasser had workplace authority sufficient to carry out the quid pro quo offer or threat." *Purnell v. City of Phila.*, 2021 WL 3617161, at *2 (E.D. Pa. Aug. 16, 2021). *See* 29 C.F.R. § 1604.11(a).

In *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 427 (3d Cir. 2020), the Third Circuit held that a plaintiff stated a claim for a quid pro quo sexual harassment theory based on allegations that

> Starnes alleged Doerr forced her to engage in sexual relations, shared pornography with her, and requested she send him videos of herself performing lewd acts. She accused Doerr of flirting with her in an attempt to restart sexual relations. Starnes also alleged that their sexual encounters were considered a "business relationship," that Doerr had discussed using his position to help her get hired in Butler County before coercing her to engage in sexual relations, and that she felt compelled to acquiesce to his demands because of his position as her boss. And after they stopped having sex, Starnes alleged that she was denied many terms and conditions of her employment.

The Complaint alleges that Plaintiff was getting fewer work hours and complained to Duffey. Thereafter, Duffey, her manager, said he would give her more work hours in exchange for oral sex. Plaintiff complied in part because of Duffey's "power over her." Subsequently, when she asked Duffey about being scheduled for more work hours, he said she would "have to open up her availability." After her last day of work, she continued to communicate with Duffey because she thought she might be scheduled for more hours. During that time, she agreed to Duffey's request that she send him nude photos but she did not receive more work hours. Duffey fired her shortly thereafter. These allegations are sufficient to state a claim of quid pro quo

7

discrimination.[6]

Defendants argue that Plaintiff alleges that she received additional shifts *before* the harassing conduct occurred. However, Plaintiff has also alleged that Duffey told her he would provide her additional shifts if she performed sexual acts on him and she did so. Whether he actually provided the shifts thereafter is irrelevant. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d Cir. 1997) ("a quid pro quo violation occurs at the time when an employee is told that his or her compensation, etc. is dependent upon submission to unwelcome sexual advances. At that point, the employee has been subjected to discrimination because of sex."), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Because Plaintiff has stated a claim for quid pro quo sexual harassment, Defendants' motion to dismiss Count II will be denied.

B.  Title VII Retaliation Claim (Count IV)

In Count IV, Plaintiff alleges a claim of retaliation in violation of Title VII. Defendants move to dismiss this claim on the ground that she has failed to allege a causal nexus between any protected activity and an adverse employment action.

Discrimination against an individual who has opposed a practice prohibited by Title VII or who has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the statute is actionable conduct. 42 U.S.C. § 2000e-3(a).

---

[6] Defendants cite *Smith v. East Penn Mfg., Inc.*, 2014 WL 3908122 (E.D. Pa. Aug. 8, 2014) in support of their motion. There, the undisputed evidence at the summary judgment stage established that plaintiff's quid pro quo discrimination claim could not be sustained because she did not suffer any tangible employment action at all, much less as a result of her submission to or rejection of sexual advances. *Id.* at *17. By contrast, Plaintiff alleges that she was promised additional shifts if she submitted to Duffey's overtures, but did not receive them and was ultimately terminated.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the analytical framework that govern claims of allegations of retaliation for engaging in protected activity under Title VII (which was later applied to other anti-discrimination statutes). Under the first step of that framework, a plaintiff "must establish a prima facie case by showing '(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

The Third Circuit has stated that in order to establish a causal connection between any protected activity and an adverse employment action,

> a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In order to defeat a motion to dismiss, however, it is sufficient, but not necessary, to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement.").

Plaintiff has alleged that she engaged in protected activity, *i.e.*, complaining about sexual harassment in the workplace, including by Duffey,[7] was then subjected to adverse employment actions that included sexual assault, exploitation, not being scheduled for work shifts and ultimately, being terminated, and that all of these actions occurred within one month of the protected activity. *See Moore v. City of Phila.*, 461 F.3d 331, 347 (3d Cir. 2006) (concluding that a factfinder could find that threats, assaults and a transfer after plaintiff opposed treatment of black officers was caused by retaliatory animus.) These allegations are sufficient at this stage of the proceedings to state a retaliation claim under Title VII. Therefore, with respect to Count IV, the motion to dismiss will be denied.

   C.  Retaliation under the ADA (Count VI)

In Count VI, Plaintiff alleges a claim of retaliation under the ADA.[8] Defendants move to dismiss the claim on the ground that she fails to allege protected activity under the statute.

Discrimination against an individual who has opposed a practice prohibited by the ADA is actionable conduct. 42 U.S.C. § 12203(a). Protected activity can include 'informal protests . . . including making complaints to management,' but it 'must not be equivocal [or vague].'" *Qin v. Vertex, Inc.*, 100 F.4th 458, 476 (3d Cir. 2024) (quoting *Moore*, 461 F.3d at 341-43).

According to the Amended Complaint, both before and after Plaintiff's mother notified Duffey of her disability, Duffey flirted with her. Several weeks after her mother first advised Duffey of her condition, Plaintiff noticed that she was not getting sufficient work hours and complained to Duffey but nothing was done. Duffey continued to flirt with her, prompting

---

[7] Defendants inaccurately contend that "the only action that *could* constitute protected activity under these statutes was Plaintiff's alleged complaint about a co-worker's misconduct." (ECF No. 15 at 10.)

[8] Defendants have not moved to dismiss Count V of the Amended Complaint, which alleges that, due to Plaintiff's disability, she was sexually assaulted, was not scheduled to work for over a month prior to her termination and was ultimately terminated from her employment.

10

another warning from her mother. Around the same time, Plaintiff reported that Glenn harassed her. Thereafter, Duffey offered more work shifts to her, and then told her that he would give her additional hours if she performed sexual favors for him. After she worked her next shift, she performed sexual favors for Duffey, and subsequently worked two additional shifts. Thereafter, Duffey did not schedule her for any additional shifts despite her subsequent requests but she did continue to communicate with him and send him nude photos. She was terminated several weeks later.

Plaintiff has not stated a claim for ADA retaliation. The Complaint does not assert that at the time of the events at issue, Plaintiff made any complaint, formal or informal, that anyone at Ollie's engaged in disparate treatment based on her disability, or that she sought, and was denied, a reasonable accommodation due to her neurological condition. Duffey is alleged to have flirted with her both before and after her mother advised him of her condition. While Plaintiff complained that she was not getting enough work hours several months after she was hired, Plaintiff does not allege that this was because of her disability. Moreover, she does not allege that she reported to management that Glenn was sexually harassing her because of her disability, or that Glenn was even aware of her disability. In fact, according to the factual allegations in the Complaint, at some point after she complained, she received additional shifts in exchange for a promise of sexual favors.

Thus, as Defendants note, in the absence of a protected activity, the allegations in the Complaint fail to establish that she sustained an adverse employment action that was connected to her disability. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). Here, the Court concludes that it

would be futile to permit a curative amendment because the facts pleaded fail to support an ADA retaliation claim and Plaintiff has already amended her Complaint once.

Therefore, with respect to Count VI, the motion to dismiss will be granted and the claim will be dismissed with prejudice.

### D. PHRA Claims (Count VII)

In Count VII, Plaintiff alleges the same claims of gender and disability discrimination and retaliation that she alleges under Title VII and the ADA in Counts I-VI. The PHRA prohibits all of these kinds of workplace discrimination. *See* 43 P.S. § 955(a) (prohibiting sex and disability discrimination), § 955(d) (prohibiting retaliation). In addition, and unlike the federal statutes, the PHRA contains a provision that explicitly allows for individual liability based on "aiding and abetting" discrimination. 43 P.S. § 955(e). *See Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996). Thus, Duffey is a proper defendant with respect to Count VII.

Defendants move to dismiss Count VII because Plaintiff's second EEOC charge of discrimination (containing allegations of discrimination on the basis of disability and retaliation) was untimely filed and further, with respect to any retaliation claim on the basis of sexual harassment, she fails to allege a causal nexus between her protected activity and any adverse employment action.

1. Timing of EEOC Charge

Under the PHRA, a complaint of discrimination (which is a prerequisite for bringing suit in court) must be filed with the PHRC within 180 days of the alleged discriminatory act. 43 P.S. §§ 959(h), 962. Failure to file within this time period "acts to bar a complainant from seeking judicial review of the claims." *Foust v. Pa. Dep't of Hum. Servs.*, 305 A.3d 1128, 1132 (Pa. Commw. 2023) (citation omitted). Although the 180-day filing period under Title VII is

extended to 300 days in a "deferral state" such as Pennsylvania, the PHRA contains no equivalent provision for extension. Thus, the same claims may be timely for Title VII purposes but not for purposes of the PHRA. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).

As noted above, Plaintiff's second charge of discrimination (the one which asserted disability discrimination and retaliation) was not filed until August 30, 2024, which was 230 days after her January 13, 2024 termination. Thus, it was untimely.[9]

Plaintiff concedes this point. (ECF No. 20 at 15.) Therefore, with respect to the disability discrimination claims in Count VII, the motion to dismiss will be granted with prejudice.

    2. Retaliation Related to Sexual Harassment

As explained above with respect to Count IV, Plaintiff has adequately alleged that she complained about sexual harassment and was subjected to further harassment and other adverse employment actions leading up to her termination. The Court of Appeals has held that "the same framework for analyzing retaliation claims applies to both" Title VII and the PHRA. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 n.9 (3d Cir. 2016). Therefore, with respect to her sexual harassment and retaliation claim in Count VII, the motion to dismiss will be denied.

As a result, the motion to dismiss Count VII will be granted with prejudice with respect to Plaintiff's PHRA claims based on disability discrimination and otherwise denied.

---

[9] Although hostile work environment claims are subject to the continuing violations doctrine, "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Because Plaintiff filed her second PHRC charge more than 180 days after she was terminated, no act alleged therein could fall within the statutory time period.

E.  <u>Intentional Infliction of Emotional Distress (Count X)</u>

In Count X, Plaintiff alleges a claim of intentional infliction of emotional distress. Defendants move to dismiss Ollie's from this claim on the ground that, even if Duffey engaged in the actions that Plaintiff alleges, he did so outside the scope of his employment and there is no basis for holding his employer liable.

In Pennsylvania, an employer may be held liable for the torts of its employees only if that conduct falls within the employee's scope of employment. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1276 (3d Cir.1979). This applies to intentional conduct as well as negligent conduct. *Costa v. Roxborough Mem. Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998) (citing Restatement (Second) of Agency § 228). Under Pennsylvania law:

> The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Costa*, 708 A.2d at 493 (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. 1979)).

Duffey's alleged actions—sexually harassing and assaulting Plaintiff and manipulating her into sending him nude pictures of her over Snapchat—cannot be described as falling within the scope of his employment. *See Doe 6 v. Pennsylvania State Univ.*, 982 F. Supp. 2d 437, 445 (E.D. Pa. 2013) (rejecting vicarious liability claims, including intentional infliction of emotional distress, against university based on Gerald Sandusky's sexual assaults on minors because this conduct was not within the scope of his employment); *Shaup v. Jack D's, Inc.*, 2004 WL 1837030, at *2 (E.D. Pa. Aug. 17, 2004) (dismissing claim as alleged against restaurant based on harassing conduct of several employees because the conduct was outside the scope of their

14

employment). Thus, although Duffey may be held liable for this alleged conduct, Ollie's cannot be liable for his actions based on a claim of intentional infliction of emotional distress. Moreover, Plaintiff consents to the dismissal of this claim. Therefore, with respect to Count X, the motion to dismiss Ollie's will be granted with prejudice.

### V. Conclusion

For the reasons explained above, the partial motion to dismiss filed by Defendants will be granted with prejudice with respect to Count VI and the PHRA claim based on disability in Count VII. Further, Ollie's will be dismissed with prejudice as a defendant with respect to Count X. In all other respects, the partial motion to dismiss will be denied.

An appropriate order will follow.

Dated: June 10, 2025                              BY THE COURT:

                                                  /s/ Patricia L. Dodge
                                                  PATRICIA L. DODGE
                                                  UNITED STATES MAGISTRATE JUDGE